```
                  UNITED STATES DISTRICT COURT
                     DISTRICT OF MINNESOTA
                    Civil No. 08-6476(DSD/JJK)
```

Joseph and Carolyn Friedberg,

       Plaintiffs,

v.                                                              **ORDER**

Chubb & Son, Inc., and Chubb
Indemnity Insurance Company,

       Defendants.

      Steven E. Wolter, Esq. and Kelley, Wolter & Scott, P.A.,
      431 South Seventh Street, Suite 2530, Minneapolis, MN
      55415, counsel for plaintiffs.

      Daniel W. Berglund, Esq., David E. Bland, Esq. and
      Robins, Kaplan, Miller & Ciresi, 800 LaSalle Avenue,
      Suite 2800, Minneapolis, MN 55402, counsel for
      defendants.

This matter is before the court on plaintiffs Joseph and Carolyn Friedbergs'[1] (the "Friedbergs") partial motion for summary judgment. After a review of the file, record and proceedings herein, and for the following reasons, the court denies the Friedbergs' motion.

---

[1] The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and the dispute is between citizens of different states. The Friedbergs are citizens of Minnesota and defendants Chubb & Son, Inc. and Chubb Indemnity Insurance Company are New York corporations with their principal places of business in New Jersey. (Doc. No. 1 ¶¶ 3-5.)

## BACKGROUND

This insurance coverage dispute arises out of the Friedbergs' 2001 purchase of Masterpiece Policy 12281532-04 (the "Policy") from defendants Chubb & Son, Inc. and Chubb Indemnity Insurance Company (collectively, "Chubb"). The Policy covered the Friedbergs' primary residence in Wayzata, Minnesota, and other articles and properties. The "Deluxe House Coverage" portion of the Policy provided that "a 'covered loss' includes **all risk** of physical loss to your house or other property covered under this part of your Masterpiece Policy, unless stated otherwise or an exclusion applies." (Bestland Decl. Ex. C at 171 (emphasis in original).) The Policy contained the following relevant exclusions:

> **Gradual or sudden loss** ("Rot Exclusion"). We do not provide coverage for the presence of wear and tear, gradual deterioration, rust, bacteria, corrosion, dry or wet rot, or warping, however caused, or any loss caused by[2] wear and tear, gradual deterioration, rust, bacteria, corrosion, dry or wet rot, or warping. We also do not cover any loss caused by inherent vice, latent defect or mechanical breakdown. But we do insure ensuing covered loss unless another exclusion applies ("Ensuing Loss Provision").
>
> ...
>
> **Fungi and Mold** ("Mold Exclusion"). We do not provide coverage for the presence of mold, however caused, or any loss caused by mold, other than as provided under the Extra

---

[2] The Policy defined "caused by" as "any loss that is contributed to, made worse by, or in any way results from that peril." (Bestland Decl. Ex. C at 176.)

2

> Coverage, [m]old remediation expenses. But we do cover mold resulting from fire or lightning unless another exclusion applies. "Mold" means fungi, mold, mold spores, mycotoxins, and the scents and other byproducts of any of these.
>
> ...
>
> **Faulty planning, construction or maintenance** ("Construction Defects Exclusion"). We do not cover any loss caused by the faulty acts, errors or omissions of you or any other person in planning, construction or maintenance. It does not matter whether the faulty acts, errors or omissions take place on or off the insured property. But we do insure ensuing covered loss unless another exclusion applies. "Planning" includes zoning, placing, surveying, designing, compacting, setting specifications, developing property and establishing building codes or construction standards. "Construction" includes materials, workmanship, and parts or equipment used for construction or repair.

(Id. Ex. C at 176-78 (emphasis in original).)

In December 2006, the Friedbergs hired Donnelly Stucco ("Donnelly") to repair a small hole in the exterior of their home. (Id. Ex. A at 23.) While conducting the repair, Donnelly discovered extensive water damage. (Id. Ex. A at 32.) The Friedbergs notified Chubb of the loss on January 22, 2007. (Id. Ex. A at 31.) On January 31, 2007, Chubb adjuster Scott Bestland ("Bestland") and expert Dr. Larry Gubbe ("Gubbe") inspected the Friedbergs' home. Sample cuts into the home's exterior revealed water intrusion causing rot, mold and damage to the home's wood framing and insulation. (See id. Ex. B at 244-78.) Bestland's

3

"Inspection Report" noted the failure of the Dryvit cladding - an exterior insulation and finish system ("EIFS") that covered the home's wood frame - as a "cause and origin" of the damage: "[I]t appears that Dryvit has failed due to no vertical 'control/expansion' joints that result in Dryvit cracking because it cannot expand or contract. Once the Dryvit cracks, moisture can get behind resulting in deterioration within the exterior walls.... Also, evidence of poor design and workmanship." (Id. Ex. A at 23.)

Gubbe inspected the Friedbergs' home again in April 2007 after the Dryvit cladding had been removed. In a July 23, 2007, report, Gubbe detailed the results of the January and April inspections, noting water damage to the home's architectural beams, roof deck, and sheathing and framing members. (Gubbe Decl. Ex. A at 73, 75-76.) Gubbe concluded that the damage to the architectural beams and underlying walls was "primarily caused by the failure to install control joints or otherwise to provide for differential movement which caused the beams to develop cracks through which water could penetrate the EIFS cladding." (Id. Ex. A at 78.) Further, Gubbe found that "the damage attributable to inadequate design and construction of the beams ... has been cumulatively occurring over a period of several years" and was not "attributable to a single event such as a storm or other climatic phenomena." (Id.)

On August 7, 2007, Chubb denied the Friedbergs' claim on the basis that the damage sustained was excluded under the Policy. (Bestland Decl. Ex. D at 81.) According to Chubb, based on the inspections, "it was evident that water has intruded via the exterior roof and wall for sometime, resulting in gradual deterioration." (Id.) On December 3, 2008, the Friedbergs filed a complaint in state court, seeking a declaratory judgment that the Policy covers the damage to their home, and asserting breach of contract and estoppel claims. Chubb timely removed. The court now considers the Friedbergs' November 5, 2009, partial motion for summary judgment on the declaratory judgment claim.

## DISCUSSION

### I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the

evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

## II. Insurance Coverage

The interpretation of an insurance policy is a question of law.[3] Am. Family Ins. Co. v. Walser, 628 N.W.2d 605, 609 (Minn. 2001). The court interprets an insurance policy in accordance with general principles of contract construction, giving effect to the intent of the parties. Thommes v. Milwaukee Ins. Co., 641 N.W.2d 877, 879 (Minn. 2002). The court gives unambiguous language its plain and ordinary meaning, and construes ambiguous language against the drafter and in favor of the insured. Id. at 880; Nathe

---

[3] The court applies Minnesota law in this diversity case. See Source Food Tech., Inc. v. U.S. Fid. & Guar. Co., 465 F.3d 834, 836 (8th Cir. 2006) (applying Minnesota law to insurance policy in diversity case).

Bros., Inc. v. Am. Nat'l Fire Ins. Co., 615 N.W.2d 341, 344 (Minn. 2000). Language is ambiguous if "reasonably subject to more than one interpretation." Columbia Heights Motors, Inc. v. Allstate Ins. Co., 275 N.W.2d 32, 34 (Minn. 1979). However, the court "guard[s] against invitations to find ambiguity where none exists." Metro. Prop. & Cas. Ins. Co. v. Jablonske, 722 N.W.2d 319, 324 (Minn. Ct. App. 2006) (internal quotations omitted).

The insured has the burden to establish a prima facie case of coverage. SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 311 (Minn. 1995), overruled on other grounds by Bahr v. Boise Cascade Corp., 766 N.W.2d 910, 919 (Minn. 2009). If coverage is established, the burden shifts to the insurer to prove that a policy exclusion applies. Id. at 313. The court strictly construes exclusions against the insurer, in light of the insured's expectations. Thommes, 641 N.W.2d at 880. If there are multiple causes of a loss, an insured may still recover so long as an excluded peril is not the overriding cause. See Henning Nelson Const. Co. v. Fireman's Fund Am. Life Ins. Co., 383 N.W.2d 645, 653 (Minn. 1986); Campbell v. Ins. Serv. Agency, 424 N.W.2d 785, 789 (Minn. Ct. App. 1988). Once the insurer demonstrates that an exclusion applies, the insured bears the burden of proving an exception to the exclusion. SCSC Corp., 536 N.W.2d at 314.

### A. Plaintiffs' Prima Facie Case

The Friedbergs maintain that coverage exists because their home suffered a physical loss. The court agrees. Pursuant to the Policy, a "covered loss" included "**all risk** of physical loss ... unless ... an exclusion applies." (Bestland Decl. Ex. C at 171 (emphasis in original).) See Gen. Mills, Inc. v. Gold Medal Ins. Co., 622 N.W.2d 147, 152 (Minn. Ct. App. 2001) (in "all risk" insurance policy, coverage extends to all fortuitous losses unless expressly excluded) (citation omitted); Sentinel Mgmt. Co. v. N.H. Ins. Co., 563 N.W.2d 296, 299 (Minn. Ct. App. 1997) (same). As detailed in Gubbe's report, the Friedbergs' home suffered a physical loss, specifically, water damage to the home's architectural beams, roof deck, and sheathing and framing members. (Gubbe Decl. Ex. A at 75-76.) This evidence suffices to establish a prima facie case of coverage, and the burden shifts to Chubb to show that the Policy excluded the loss.

### B. Policy Exclusions

Chubb argues that the Construction Defects Exclusion bars coverage because the Friedbergs' loss was caused by faulty workmanship. In support of this argument, Chubb cites Gubbe's conclusion that the damage was "primarily caused by the failure to install control joints or otherwise to provide for differential movement which caused the beams to develop cracks through which water could penetrate the EIFS cladding." (Id. Ex. A at 78.)

Chubb also notes that in litigation against Marcus Blue,[4] the company that repaired the Friedbergs' roof, the Friedbergs alleged that:

> As a direct result of the faulty workmanship and defective construction practices of [Marcus Blue], the Home has suffered or will suffer continuous water entry into the wall cavities of the Home causing significant damage, including, without limitation, the following: deterioration of the wall sheeting and interior wallboard, deterioration of the structural framing members, widespread growth of mold, mildew and fungus, reduced deficiency due to excess air, water and sound leakage, and structural distress and vulnerability due to freezing and thawing deterioration when wet materials are exposed to freezing temperatures.

(Wolter Aff. Ex. 22 ¶ 8.) According to Chubb, Gubbe's report and the Friedbergs' allegations in the Marcus Blue litigation indicate that the loss was caused by poor construction, a peril excluded by the Policy. Chubb further states that to the extent the Friedbergs' loss was caused by mold, rot or gradual deterioration as a result of construction-related water intrusion, coverage is barred by the Rot and Mold Exclusions.

In response, the Friedbergs argue that Gubbe's report and evidence collected by their personal consultants indicate that water damage - a covered peril - caused their loss, not poor construction, mold or rot. Alternatively, the Friedbergs assert

---

[4] D/B/A Arrow Construction U.S.A., Inc. (Wolter Aff. Ex. 22 at 1.)

that the excluded perils only indirectly contributed to their loss, and that coverage is not barred because Chubb has not shown that an excluded peril was the overriding cause.

Viewing the facts in a light most favorable to Chubb, the nonmoving party, the court determines that a genuine issue of material fact exists as to the overriding cause of the Friedbergs' loss. Based upon the evidence presented, a reasonable jury could determine that the overriding cause was poor construction, water intrusion or both. A determination of whether the Policy covers the Friedbergs' loss hinges on this factual finding.[5] Accordingly, the court denies summary judgment on the Friedbergs' declaratory judgment claim.

---

[5] In addition, the Friedbergs argue that even if coverage is excluded, summary judgment is still warranted because the Policy's Ensuing Loss Provisions provide an exception to the exclusion. "[A]n 'ensuing loss' clause ... brings within coverage a loss from a covered peril that follows as a consequence of an excluded peril." Sentinel Mgmt. Co., 563 N.W.2d at 301. "An ensuing loss is covered even if an excluded peril is a 'but for' cause of the loss." Id. As relevant here, only the Rot and Construction Defects Exclusions contain an Ensuing Loss Provision. Both provisions state: "But [Chubb] do[es] insure ensuing covered loss unless another exclusion applies." (Bestland Decl. Ex. C at 176, 178.)
  However, without a factual determination of the overriding cause of the Friedbergs' loss, the court can only hypothesize as to whether an exclusion containing an ensuing loss clause applies, and whether the Friedbergs' loss was the consequence of that excluded peril. Therefore, the court declines to grant summary judgment on this basis.

**CONCLUSION**

Based on the above, **IT IS HEREBY ORDERED** that plaintiffs' partial motion for summary judgment [Doc. No. 19] is denied.

Dated: March 30, 2010

                                            <u>s/David S. Doty</u>
                                            David S. Doty, Judge
                                            United States District Court